1  Jeffrey B. Isaacs (SBN 117104)
2  Jerome H. Friedberg (SBN 125663)
   William Wargo (SBN 189987)
   **ISAACS | FRIEDBERG LLP**
3  555 South Flower Street, Suite 4250
   Los Angeles, California 90071
4  Phone:     (213) 929-5550
   Facsimile:   (213) 955-5794
5  Email:    *jisaacs@ifcounsel.com*
6           *jfriedberg@ifcounsel.com*
           *wwargo@ifcounsel.com*
7
   *Attorneys for Plaintiff John Joe*
8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11 | **JOHN JOE,**                        | Case No. 2:21-cv-04366 |

12 |            Plaintiff,                | **COMPLAINT FOR:** |

13 |       vs.                            | **(1) RETURN OF PROPERTY** |

14 | **UNITED STATES OF AMERICA;**        |     **PURSUANT TO FEDERAL** |
   | **TRACY L. WILKISON,**               |     **RULE OF CRIMINAL** |
15 |     in her official capacity only;   |     **PROCEDURE 41(g);** |
16 | **KRISTI KOONS JOHNSON,**            |
   |     in her official and individual   | **(2) DAMAGES PURSUANT TO** |
17 |     capacities; and                  |     ***BIVENS V. SIX UNKNOWN*** |
   | **DOE UNIDENTIFIED FEDERAL**         |     ***NAMED AGENTS OF THE*** |
18 | **LAW ENFORCEMENT AGENTS**           |     ***FEDERAL BUREAU OF*** |
   | **1-10,**                            |     ***NARCOTICS*, 403 U.S. 388** |
19 |     in their individual capacities,  |     **(1971);** |
20 |            Defendants.               |
21 |                                      | **(3) DECLARATORY RELIEF;** |
   |                                      |     **AND** |
22 |                                      |
23 |                                      | **(4) ORDER REQUIRING** |
   |                                      |     **DISCLOSURE OF** |
24 |                                      |     **SUPPORTING AFFIDAVIT** |
25 |                                      |     **AND INVENTORY.** |
26 |                                      | **DEMAND FOR JURY TRIAL** |

27
28

1
**COMPLAINT**

Plaintiff John Joe alleges as follows:

<b>INTRODUCTION</b>

1.      Plaintiff brings this action pseudonymously as John Joe against Defendants United States of America ("**United States**"); Acting United States Attorney for the Central District of California, Tracy L. Wilkison ("**Wilkison**"), in her official capacity only; Assistant Director in Charge of the Los Angeles Field Office of the Federal Bureau of Investigation ("**FBI**"), Kristi Koons Johnson ("**Koons Johnson**"), in her official and individual capacities; and DOE Unidentified Federal Law Enforcement Agents 1 through 10 ("**DOES 1-10**"), in their individual capacities (collectively, "**Defendants**" or the "**government**").

2.      Plaintiff seeks redress for the government's unlawful and unconstitutional seizure, search and retention of Plaintiff's property in violation of Plaintiff's Fourth and Fifth Amendment rights.

3.      Plaintiff stored valuable personal property in safe deposit Box No. 110 that he leased at U.S. Private Vaults, Inc. ("**USPV**") in Beverly Hills, California, none of which is contraband or otherwise connected to criminal activity.

4.      As described more fully below, on or about March 22, 2021, the United States Attorney's Office for the Central District of California (the "**USAO**"), the FBI and DOES 1-10 unlawfully seized, broke open and then searched Plaintiff's safe deposit box and its contents, in violation of Plaintiff's Fourth Amendment rights. Thereafter, Defendants unlawfully deprived Plaintiff of the use, benefit and enjoyment of his property, and are continuing to deprive him of the use, benefit and enjoyment of his property, in violation of his Fourth and Fifth Amendment rights.

<b>JURISDICTION, AUTHORITY AND VENUE.</b>

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. section 1331 and Article III of the United States Constitution in that the United States is a party to this action, and the action involves questions of federal statutory and constitutional law.

2<br><b>COMPLAINT</b>

6.    This Court has the authority to order Defendants to return Plaintiff's personal property pursuant to Federal Rule of Criminal Procedure 41(g) ("**Rule 41(g)**"), even in the absence of a criminal proceeding, as it was the subject of an unlawful seizure, an unlawful search and an otherwise unlawful deprivation of property. *See Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993); *United States v. Martinson*, 809 F.2d 1364, 1366-67 (9th Cir. 1987).

7.    This Court has the inherent equitable power to order the return of Plaintiff's personal property separate and apart from Rule 41(g). *See Otonye v. United States*, 903 F. Supp. 357, 360 (E.D.N.Y. 1995).

8.    This Court has the authority to award damages against the law enforcement agents who engaged in the unlawful seizure and search of Plaintiff's property pursuant to the United States Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("***Bivens***"), and its progeny.

9.    This Court has the authority to grant the declaratory relief sought herein pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57.

10.    This Court has the authority to order the government to disclose to Plaintiff's counsel a copy of the supporting affidavit for the warrant by which Plaintiff's property was purportedly seized and any so-called inventory of the contents of his safe deposit box, pursuant to Federal Rule of Criminal Procedure 41(f) ("**Rule 41(f)**") and the Court's inherent authority to order the unsealing of a supporting affidavit. *See In re Searches and Seizures*, 2008 WL 5411772, at *3 (E.D. Cal. Dec. 19, 2008) (collecting cases).

11.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1), (2) and (3) and (e)(1) because Defendants include officers and employees of the United States and its agencies and, on information and belief, they reside in this district; because a substantial part of the events and/or omissions giving rise to the

**COMPLAINT**

1  claims alleged herein occurred in this district; and because a substantial part of the

2  property that is the subject of this action is situated in this district.

3  **PARTIES.**

4  **A.    Plaintiff.**

5      12.    Plaintiff John Joe is, and at all relevant times was, an individual over the

6  age of 18 and residing in Los Angeles County, California.

7      13.    Defendants have publicly stated that "USPV was a criminal business";

8  that it "conspired with its criminal clients to distribute drugs, launder money, and

9  structure transactions to avoid currency reporting requirements"; that these were

10  "among [the] other offenses" USPV and its clients committed; and that "the majority

11  of box holders are criminals . . . ."  Defendants have also expressly stated their

12  intention to criminally investigate any USPV box holder whose identity they can

13  determine, and, on information and belief, are currently actively conducting such

14  investigations.

15      14.    Plaintiff therefore brings this action pseudonymously, to protect himself

16  from injury, harassment, embarrassment and retaliation based merely on the fact that

17  he is a USPV box holder.  *See Does I-XXII v. Advanced Textile Corp.*, 214 F.3d 1058,

18  1067-68 (9th Cir. 2000) ("In this circuit, we allow parties to use pseudonyms in the

19  'unusual case' which nondisclosure of the party's identity 'is necessary . . . to protect

20  a person from harassment, injury, ridicule or personal embarrassment.'") (quoting

21  *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).

22  **B.    Defendants.**

23      15.    Defendant United States of America is, and at all relevant times was, the

24  United States, its departments, agencies and entities, including those responsible for

25  the Fourth and Fifth Amendment violations alleged in this action.

26      16.    Defendant Wilkison is, and at all relevant times was, the Acting

27  United States Attorney for the Central District of California (the "**U.S. Attorney**").

28  The U.S. Attorney has authority over all policies and practices of the USAO, and all

4<br>**COMPLAINT**

487790.3

1   actions taken by Assistant United States Attorneys for the Central District of

2   California.  Defendant Wilkison is sued in her official capacity only.

3       17.   Defendant Koons Johnson is, and at all relevant times was, the Assistant

4   Director in Charge of the FBI's Los Angeles Field Office (the "**Assistant Director**").

5   The Assistant Director has authority over the policies and procedures implemented

6   by, and the actions of, FBI agents assigned to the Los Angeles Field Office.

7   Defendant Koons Johnson is sued in her official and individual capacities.

8       18.   Plaintiff is unaware of the true names and capacities of those Defendants

9   sued as DOES 1-10, and therefore sues those Defendants using their fictitious names.

10  On information and belief, each such Defendant is a federal law enforcement agent

11  who supervised, participated in, or otherwise aided and assisted the unlawful seizure

12  and search of Plaintiff's safe deposit box and its contents, and is jointly and severally

13  responsible and liable for the damage and harm caused Plaintiff.  Plaintiff will amend

14  this pleading to allege the true names and capacities of DOES 1-10 when they have

15  been ascertained.

16                      **RELATED CASES.**

17      19.   This case is related to the following civil cases pending in this district

18  before United States District Judge Gary R. Klausner:

19          (a)   *John Doe v. United States of America, et al.*,

20  Case No. 2:21-cv-02803, filed on March 31, 2021 ("**Case No. 02803**");

21          (b)   *Richard Roe v. United States of America, et al.*,

22  Case No. 2:21-cv-02919, filed on April 5, 2021;

23          (c)   *Michael Moe v. United States of America, et al.*,

24  Case No. 2:21-cv-02990, filed on April 6, 2021;

25          (d)   *Charles Coe v. United States of America, et al.*,

26  Case No. 2:21-cv-03019, filed on April 7, 2021;

27          (e)   *DOES 1-6 v. United States of America, at al.*, Case No. 2:21-cv-

28  03254, filed on April 15, 2021 ("**Case No. 032554**")

487790.3

(f)     *Mitchell Magee v. United States of America, et al.*,
Case No. 2:21-cv-03298, filed on April 16, 2021;

(g)     *Louis Loe v. United States of America, et al.*,
Case No. 2:21-cv-03348, filed on April 19, 2021 (**"Case No. 03348"**); and

(h)     *Search and Seizure of Box No. 8309 at U.S. Private Vaults v.*
*United States of America*, Case No. 2:21-cv-03554, filed on April 26, 2021
("**Case No. 03554**").

20.     This case is related to the above civil cases pursuant to Local Rule
83-1.3, in that: (a) they all arise from the same or closely related transactions,
happenings and events; (b) they all call for the determination of the same or
substantially related or similar questions of law and fact; and (c) because they all
name the United States as a defendant and seek some of the same relief, they would
entail substantial duplication of effort if heard by different judges.

21.     A Notice of Related Case is being filed concurrently herewith.

## STATEMENT OF FACTS.

**A.     U.S. Private Vaults, Inc.**

22.     USPV has operated a facility offering private safe deposit boxes for rent
to the public at 9182 West Olympic Boulevard in Beverly Hills for the past decade.
There is nothing secretive or inherently illegal about the business; it advertises by
prominent store front signage and on-line through a website that provides detailed
information about the services it offers, including videos of customers accessing their
safe deposit boxes. *See* https://www.usprivatevaults.com.

23.     USPV houses several hundred safe deposit boxes of varying sizes, each
secured by its own key.  The safe deposit boxes are grouped into separate clusters of
physically connected individual safe deposit boxes called "nests."  USPV leases these
boxes to the public under yearly leases and provides security and insurance for their
contents.  Many of USPV's customers live in the vicinity and use its services because
it is conveniently located, and/or because local banks did not have safe deposit boxes

available for lease, including Plaintiff.

24.     Notably, USPV does not keep a key to any rented box, which means that the only person with the ability to open the box is the box holder or his or her authorized designee.  *See* https://www.usprivatevaults.com/uspv-vs-bank-safe-deposit-box.

25.     According to USPV's website:

- USPV has been operating in Beverly Hills since 2011.

- USPV provides several advantages that are unavailable at bank safety deposit boxes:

  o All USPV boxes are insured.  Banks do not offer insurance for their boxes.

  o USPV does not hold keys to their clients' boxes.  Banks do keep a key.

  o USPV is not subject to federal banking rules that could mandate "bank holidays" or a suspension of withdrawals in case of an economic crisis.

  o Accessing a box at USPV takes much less time than at a bank.  Indeed, the facility advertises "In & out access in 5 minutes."

  o USPV boxes are not subject to probate lock out upon the death of the box owner.

  o USPV offers a wider selection of box sizes than do banks.

- Security at USPV is handled by ADT (a publicly traded security company with over $5 billion in revenue, which operates "the largest network of security professionals in the United States").

https://investor.adt.com/press-releases/press-release-details/2021/ADT-Reports-Fourth-Quarter-and-Full-Year-2020-Results/default.aspx.

**B.    Plaintiff is a USPV Box Holder.**

26.     Plaintiff leases safe deposit Box No. 110 at USPV.  Plaintiff was given the only two keys to the box and has maintained control over the box since commencement of the lease.  Plaintiff has one of the keys to Box No. 110, and has given the other key to his mother, who lives out-of-state.  She has never sought to

1   access the box.

2       27.     Plaintiff is current on his lease payments.  He has an expectation of

3   privacy in the interior of the box and its contents.

4       28.     Plaintiff leased his box at USPV for the sake of convenience.  Plaintiff

5   wanted a secure place to store his valuables, and USPV was located only a few blocks

6   from his residence.  In addition, Plaintiff's local bank branch did not offer safe

7   deposit boxes.

8       29.     Plaintiff is not an owner, officer, director, manager, supervisor,

9   employee, or representative of USPV, and is not associated with or a customer of the

10  Gold Business that is co-located with or adjacent to USPV.  He is not aware of any

11  criminal activity occurring at or connected to USPV, and would not have leased a

12  box, or continued to lease a box, at USPV if he had become aware of any such

13  activity.

14      30.     Plaintiff's box contains (a) a silver bar, (b) gold and silver ingots, (c) a

15  watch that was given to him by his grandfather that is a cherished and valuable family

16  heirloom, and (d) cash.  The contents of the box are not contraband or otherwise

17  connected to criminal activity.

18      31.     Affixed to the top of Plaintiff's box was a form provided by USPV.  The

19  form gave the name of Plaintiff, his telephone number and his email address, and the

20  name of Plaintiff's mother and her telephone number, for use in the event Plaintiff

21  died or was otherwise incapacitated.

22      32.     Plaintiff's property was in his safe deposit box when the government

23  seized control of USPV and all of the other safe deposit boxes at USPV on or about

24  March 22, 2021.  Plaintiff has been unable to enter the USPV facility or access his

25  box and its contents since the commencement of the government's search on the

26  morning of March 22, 2021.

27  //

28  //

**COMPLAINT**

487790.3

**C.     The Government Seizes and Searches All USPV Safe Deposit Boxes and Their Contents, Including Plaintiff's.**

33.     Beginning early in the morning on Monday, March 22, 2021, agents of the United States, including DOES 1-10, executed a seizure warrant (the "seizure warrant") at USPV.

34.     The seizure warrant states that, "[t]he items to be seized are the following pieces of business equipment," including "the nests of safety deposit boxes and keys," without any limit or reference to particular safe deposit boxes or descriptions of particular nests.

35.     The seizure warrant further states that:

> *This warrant does not authorize a criminal search or seizure of the contents of the safety deposit boxes*.  In seizing the nests of boxes, agents shall follow their written inventory policies to protect their agencies and the contents of the boxes. Also in accordance with their written policies, agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property.  (emphasis added.)

36.     The government has only unsealed and publicly disclosed a select and very small portion of the affidavit purportedly supporting the seizure warrant.

37.     The portion of the affidavit unsealed by the government provides as follows:

> The warrants authorize the seizure of the nests of the boxes themselves, not their contents.  By seizing the nests of safety deposit boxes, the government will necessarily end up with custody of what is inside those boxes initially.  Agents will follow their written inventory policies to protect their agencies from claims of theft or damage to the content of the boxes, and

9

**COMPLAINT**

1         to ensure that no hazardous items are unknowingly stored in a

2         dangerous manner.

3     39.    The affidavit additionally states that:

4         Agents will attempt to notify the lawful owners of the property

5         stored in the boxes how to claim their property, such as by

6         posting that information on the internet or at USPV itself, or

7         by contacting the owners directly.  In order to notify the

8         owners directly, agents will, in accordance with their policies

9         regarding an unknown person's property, look for contract

10        information or something which identifies the owner, (USPV

11        recommends that box renters include their or their designees'

12        telephone numbers on a note in a box in the event that UPSV

13        removes the contents for nonpayment of rental fees.)

14     40.    In a footnote, the affidavit further limited the extent of any inventory

15 search as follows:

16         The FBI policy regarding taking custody of an unknown

17         person's property provides, in part, that agents "inspect the

18         property as necessary to identify the owner and preserve the

19         property for safe keeping."   The inspection "***should extend no***

20         ***further than necessary to determine ownership***."  (emphasis

21         added).

22     41.    In executing the seizure warrant, the agents closed the parking lot and

23 the USPV facility to the public and to box holders.  *See* "Federal Investigation Takes

24 Over Beverly Hills Strip Mall," *Beverly Hills Courier* (Mar. 25, 2021), available at

25 https://beverlyhillscourier.com/2021/03/25/federal-investigation-takes-over-beverly-

26 hills-strip-mall/ ("The strip mall at the intersection of West Olympic Boulevard and

27 South Palm Drive is hardly something to gawk at—upscale by strip mall standards,

28 but still a strip mall.  But since March 22, dozens of local and federal agents have

**COMPLAINT**

1   taken over the lot.").

2       42.     On Tuesday, March 23, when the agents were still present at USPV,

3   counsel for the box holder in the Case No. 02803 visited the site and attempted to

4   speak with an agent to learn whether there was a warrant for his clients' safe deposit

5   boxes, and, if so, to obtain a copy of the warrant pursuant to the Federal Rules of

6   Criminal Procedure.  A police officer guarding the perimeter carried counsel's

7   message inside to the agents and returned with a message that no agents would come

8   out to speak with counsel, but that counsel could call a telephone number that the

9   agents provided.  The number provided was the FBI's general Los Angeles number.

10  Counsel left a voicemail message at that number, but his call was never returned.

11      43.     Counsel subsequently learned that Assistant United States Attorney

12  ("**AUSA**") Andrew Brown was handling the matter.  That same day, another attorney

13  for the box holder in Case No. 02803 contacted AUSA Brown to attempt (a) to

14  determine whether his clients' safe deposit boxes had been searched; (b) to determine

15  whether his clients' property had been seized; and (c) in the event either had

16  occurred, to obtain a copy of the warrant pursuant to the Federal Rules.

17      44.     During the ensuing conversation, AUSA Brown told the attorney the

18  following:

19      •     The government is seizing all safe deposit boxes at the site, even

20            though the boxes are separately leased by numerous unknown

21            individuals;

22      •     The government will inspect and inventory the contents of every box

23            and use that information to try to identify every box's owner(s);

24      •     The government will not read the contents of notebooks or thumb

25            drives that they find in the boxes;

26      •     A search and seizure warrant was served on the owners or management

27            of USPV, but AUSA Brown declined to disclose either the names of

28            the persons served or their counsel;

11
**COMPLAINT**

- The government will not provide the seizure warrant to a USPV box holder unless and until the box holder identifies himself or herself to the government;

- If a box holder identifies himself or herself, the government will commence an investigation of the holder to determine whether he or she came by the contents of his or her box legally, and the box holder will be required to establish his or her claim to lawful ownership of the property contained in the box; and

- The government assumes that all USPV box holders are engaged in illegal activity, even though the government does not know the identity of the box holders or the contents of their boxes.

45. Accordingly, as confirmed by AUSA Brown, it was and remains the government's plan to subject every USPV box holder to criminal investigation by doing the following:

(a) Each safe deposit box holder would be required to disclose his or her identity to the government to make a claim for the return of the contents of their box.

(b) Once provided with the box holder's identity, the government would open a criminal investigation into that person based upon AUSA Brown's belief that anybody who utilized the safe deposit boxes at USPV was a criminal engaged in felonious activity.

(c) The government would also refuse to return property found in a safe deposit box to its owner unless the box holder explained to the government how they obtained that property and could prove to the government that it was not related to criminal activity.

**D.    The Government's Phony Claims Process**

46. As of March 26, 2021, the USPV location was closed and a sign − a true and correct depiction of which is pictured below − was affixed to the front door

12

**COMPLAINT**

directing safe deposit box holders to use the web link *forms.fbi.gov/uspvclaims* to "initiate a claim for your US Private Vaults box":



47.  The form located at forms.fbi.gov/uspvclaims − a true and correct depiction of which is pictured below − states: "To make a claim for property stored at U.S. Private Vaults in Beverly Hills, California, please provide the following information.  An FBI agent will contact you for additional details."  The form requires the box holder to enter his or her first name, last name and contact number for submission:



487790.3

48.    The form also requires the person submitting it to acknowledge that "it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning the facts on this form as applicable under the provisions of Title 18, United States Code, Section 1001, et seq."

49.    On information and belief, the government's website and form are nothing more than a subterfuge for obtaining the identities and contact information of USPV box holders, in furtherance of the government's plan to criminally investigate all USPV box holders, as confirmed by the following facts, among others:

(a)    The form does not ask, or even allow, a box holder to list his or her box number, and thus it cannot possibly aid the government in returning the contents of particular safe deposit boxes to their owners;

(b)    Government representatives have admitted to persons who have completed and submitted forms that the FBI currently has no established or standardized policies, procedures, or process for returning the contents of safe deposit boxes to their owners; and

(c)    Since at the time the government had not initiated forfeiture proceedings against the contents of the vast majority of safe deposit boxes, including Plaintiff's, there was no legal basis for requiring box holders to submit "claims" to obtain return of their property.

50.    On or about March 24, 2021, an attorney for Plaintiff submitted a claim for return of property on behalf of Plaintiff through the government's website, giving counsel's name and contact information.  The government respond to this claim with a form email stating that, "[w]ithin the next 30 to 60 days, someone from the FBI will contact you either to make arrangements to return your property, or to request additional information."  The attorney received no follow-up inquiry from the government regarding the claim submitted through the government's website.

51.    On or about April 8, 2021, the attorney spoke to an FBI agent about return of Plaintiff's property.  The FBI agent told the attorney that there was as of yet

14

**COMPLAINT**

1   no established process for the return of property, and that it would be "weeks" before

2   there was one.  The FBI agent agreed with the attorney that there was no precedent

3   for a seizure like that which had occurred at USPV, and that the government had no

4   existing process that would allow for the return of Plaintiff's property.

5         52.    On information and belief, attorneys representing several different

6   USPV box holders have proposed to AUSA Brown that he use a special master or a

7   filter team to return property seized from the safe deposit boxes at USPV, to allow the

8   government to return property to box holders without them having to reveal their

9   identities to investigators or prosecutors.  AUSA Brown rejected these proposals out

10  of hand.

11        53.    The government never contacted Plaintiff or his mother to return

12  Plaintiff's property to him, although it had his name and contact information and his

13  mother's name and contact information for more than two months.

14  **E.     The Government's Public Statements and Admissions**

15        54.    In an April 2, 2021 public filing in Case No. 02803, the USAO made the

16  following relevant statements, among others, concerning the seizure and search of the

17  USPV safe deposit boxes, which necessarily included Plaintiff's box:

18              (a)    "USPV was a criminal business that conspired with its criminal

19  clients to distribute drugs, launder money, and structure transactions to avoid

20  currency reporting requirements, among other offenses."

21              (b)    "[T]he majority of box holders are criminals . . . ."

22              (c)    "The government obtained a sealed criminal seizure warrant for,

23  among other things, the nests of safety deposit boxes located at USPV."

24              (d)    "During the week of March 22 through 26, federal agents

25  executed the seizure warrant and removed the contents of safety deposit boxes,

26  inventorying their contents in the process . . . ."

27              (e)    "The inventory was completed on site."

28              (f)    "Agents left USPV on March 26, 2021."

1        (g)    "[A]ll the inventory searches were completed by March 26, 2021."

2        55.    In an April 16, 2021 public filing in Case No. 03254, the USAO made

3 the following additional statements, among others, concerning the seizure and search

4 of the USPV safe deposit boxes, which necessarily included Plaintiff's box:

5        (a)    "[F]ar from using anonymity to protect the powerless … plaintiffs

6 hope to use it to protect rich criminals from the consequences of their crimes, and to

7 keep their ill-gotten gains."

8        (b)    "The government seized the nests of safety deposit boxes because

9 there was overwhelming evidence that USPV was a criminal enterprise that conspired

10 with its criminal clients to distribute drugs, launder money, and structure transactions

11 to avoid currency reporting requirements, among other offenses."

12        (c)    "[T]he majority of the box holders are criminals who used

13 UPSV's anonymity to hide their ill-gotten wealth … ."

14        56.    These statements confirm that, at least in Plaintiff's case, the

15 government had no probable cause to seize, search and retain the contents of

16 Plaintiff's safe deposit box, and did so based only on the entirely false and fictitious

17 assumption that Plaintiff was a criminal engaged in felonious criminal activity merely

18 because he leased a safe deposit box at USPV.

19 **F.**    **Plaintiff Is Suffering Ongoing Harm.**

20        57.    Plaintiff's property that he was storing in his safe deposit box remains in

21 the government's possession and control, and Plaintiff continues to be deprived of

22 any use, benefit, enjoyment, or access to that property.  Meanwhile, Plaintiff has no

23 means to recover possession of that property because the government has no

24 established and standardized policies, procedures, or processes for promptly returning

25 Plaintiff's property to him.

26 //

27 //

28 //

## GOVERNING LEGAL PRINCIPLES

**A.     Relevant Search and Seizure Law.**

58.     The Fourth Amendment to the United States Constitution provides that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const., amend IV.

### *1.     The Probable Cause Requirment.*

59.     The confiscation, detention, inspection and/or cataloguing of the contents of a safe deposit box containing private property is a search and seizure for purposes of the Fourth Amendment.  *See, e.g., United States v. Chadwick*, 433 U.S. 1, 11 (1977) ("By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination."), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991); *United States v. Spilotro*, 800 F.2d 959, 962 (9th Cir. 1986) ("We begin by noting that there is no question that defendant Blasko has standing to challenge the search of his home, person, and safe deposit box."); *United States v. Wetselaar*, 2013 WL 8206582, *10 (D. Nev. Dec. 31, 2013) ("[A]s renters of those boxes, Defendants had a reasonable expectation of privacy in the contents, which include the space inside the box and the inner metal liner itself.").

60.     The Supreme Court has made clear that a warrant must describe the places to be searched and the items to be seized with particularity and supported by probable cause specific to those places and items:

> The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized."  The manifest purpose of this particularity

**COMPLAINT**

1    requirement was to prevent general searches.  By limiting the

2    authorization to search to the specific areas and things for

3    which there is probable cause to search, the requirement

4    ensures that the search will be carefully tailored to its

5    justifications, and will not take on the character of the wide-

6    ranging exploratory searches the Framers intended to prohibit.

7    Thus, the scope of a lawful search is "defined by the object of

8    the search and the places in which there is probable cause to

9    believe that it may be found.  Just as probable cause to believe

10    that a stolen lawnmower may be found in a garage will not

11    support a warrant to search an upstairs bedroom, probable

12    cause to believe that undocumented aliens are being

13    transported in a van will not justify a warrantless search of a

14    suitcase."

15  *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (quoting *United States v. Ross*,

16  456 U.S. 798, 824 (1982)); *accord United States v. SDI Future Health, Inc.,* 568 F.3d

17  684, 702-703 (9th Cir. 2009) ("A warrant must not only give clear instructions to a

18  search team, it must also give legal, that is, not overbroad, instructions.  Under the

19  Fourth Amendment, this means that there [must] be probable cause to seize the

20  particular thing[s] named in the warrant.  [P]robable cause means a fair probability

21  that contraband or evidence of a crime will be found in a particular place, based on

22  the totality of circumstances.") (citations and quotation marks omitted).

23    61.    Consequently, the search of a place or the seizure of an item pursuant to

24  an overbroad warrant for which there is no specific probable cause is invalid.  *See*

25  *United States v. Know,* 58 F.3d 423, 427 (9th Cir. 1995) ("The warrant authorized the

26  seizure of virtually every document and computer file at HK Video . . . . [T]he

27  warrant contained no limitations on which documents within each category could be

28  seized or suggested how they related to specific criminal activity.  By failing to

18

**COMPLAINT**

1  describe with any particularity the items to be seized, the warrant is indistinguishable

2  from the general warrants repeatedly held by this court to be unconstitutional.").

3      62.    Moreover, probable cause in the warrant context requires more than

4  "mere suspicion" that the place to be searched or the item to be seized is connected to

5  criminal activity; it requires an "evidentiary nexus" to the alleged criminal activity.

6  *United States v. Wanless*, 882 F.2d 1459, 1466 (9th Cir. 1989) ("Even if the evidence

7  here would . . . justify the . . . suspicion that there were illegal substances . . . [m]ere

8  suspicion does not rise to the level of probable cause.") (internal quotations omitted);

9  *United States v. Schultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994) ("While an officer's

10  'training and experience' may be considered in determining probable cause, it cannot

11  substitute for the lack of evidentiary nexus . . . between the safe deposit boxes and

12  any criminal activity.  Officer Ideker did not have anything more than a guess that

13  contraband or evidence of a crime would be found in the boxes, and therefore the . . .

14  warrant should not have been issued.").

15      ***2.***     ***The Government Cannot Deliberately or Recklessly Mislead the***

16           ***Issuing Magistrate Judge.***

17      63.    It is also well established that a warrant based upon deliberately or

18  recklessly false or misleading information material to the issue of probable cause is

19  invalid, in whole or in part.  As the Supreme Court has decreed:

20      [W]hen the Fourth Amendment demands a factual showing

21      sufficient to comprise "probable cause," the obvious

22      assumption is that there will be a *truthful showing*.  This does

23      not mean 'truthful' in the sense that every fact recited in the

24      warrant affidavit is necessarily correct, for probable cause may

25      be founded upon hearsay and upon information received from

26      informants, as well as upon information within the affiant's

27      own knowledge that sometimes must be garnered hastily.  But

28      surely it is to be 'truthful' in the sense that the information put

19

**COMPLAINT**

1               forth is believed or appropriately accepted by the affiant as

2               true.  It is established law, that a warrant affidavit must set

3               forth particular facts and circumstances underlying the

4               existence of probable cause, so as to allow the magistrate to

5               make an independent evaluation of the matter.  If an

6               informant's tip is the source of information, the affidavit must

7               recite some of the underlying circumstances from which the

8               informant concluded that relevant evidence might be

9               discovered, and some of the underlying circumstances from

10              which the officer concluded that the informant, whose identity

11              need not be disclosed, . . . was "credible" or his information

12              "reliable."  Because it is the magistrate who must determine

13              independently whether there is probable cause, it would be an

14              unthinkable imposition upon his authority if a warrant

15              affidavit, revealed after the fact to contain a deliberately or

16              reckless false statement, were to stand beyond impeachment."

17   *Franks v. Delaware*, 438 U.S. 154, 164-65 (1984) (citations and internal quotations

18   omitted, emphasis in original); *see also United States v. Perkins*, 850 F.3d 1109, 1123

19   (9th Cir. 2017) ("We hold that the district court clearly erred in finding that Agent

20   Ensley did not omit relevant information with at least a reckless disregard for whether

21   the omissions would render the warrant application misleading.  Had the omitted

22   information been included, the application would not have supported probable cause.

23   We, therefore, reverse the district court's denial of the motion to suppress evidence

24   obtained pursuant to the search warrant, and vacate Perkins' conviction.").

25         64.    The "good faith" exception to a legally insufficient search or seizure

26   warrant, recognized by the Supreme Court in *United States v. Leon*, 468 U.S. 897

27   (1984), does not apply where the warrant is "so lacking in indicia of probable cause

28   as to render official belief in its existence entirely unreasonable."  *Id.* at 923; *see also*

1   *United States. v. Underwood*, 725 F.3d 1076, 1085-86 (9th Cir. 2013) ("An affidavit

2   is so lacking in indicia of probable cause, or bare bones, when it fails to provide a

3   colorable argument for probable cause.  A colorable argument is made when

4   'thoughtful and competent judges' could disagree that probable cause does not exist.

5   Here . . . the affidavit submitted . . . in support of the state search warrant . . . was so

6   deficient as to render official belief in its existence entirely unreasonable.") (citations

7   omitted).

8   ### *3.   Inventory Versus Investigatory Searches.*

9   65.   The Supreme Court has held that "the opening of containers found

10   during inventory searches is based on the principle that an inventory search must not

11   be a ruse for a general rummaging in order to discover incriminating evidence"; that

12   "inventory searches should be designed to produce an inventory"; and that

13   "individual police officer[s] must not be allowed so much latitude that inventory

14   searches are turned into a purposeful and general means of discovering evidence of

15   crime." *Florida v. Wells*, 495 U.S. 1, 4-5 (1990) (internal quotations omitted).

16   66.   For an inventory search to be valid, it must be required by and conducted

17   in accordance with established and standardized policies and procedures.  *See*

18   *United States v. Bulacan,* 156 F.3d 963, 970 (9th Cir. 1998) ("discretion when

19   conducting an inventory" must be "exercised according to standard criteria and on the

20   basis of something other than suspicion of evidence of criminal activity") (quoting

21   *Wells*, 495 U.S. at 3-4); *United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir.

22   1991) ("[A]n inventory search is unconstitutional unless it is conducted both (a)

23   pursuant to an established inventory-search policy . . . and (b) in accordance with the

24   official procedures of the relevant [law enforcement agency]".).

25   67.   The purpose of an inventory search, according to the Supreme Court,

26   must be limited to "the protection of the owner's property while it remains in police

27   custody; the protection of the police against claims or disputes over lost or stolen

28   property; and the protection of the police from potential danger." *South Dakota v.*

1 | *Opperman*, 428 U.S. 364, 368 (1976) (citations omitted).

2 |     68.    Thus, "[a]n inventory search will not be sustained where the court

3 | believed that the officers were searching for incriminating evidence of other

4 | offenses." *United States v. Feldman*, 788 F.2d 544, 553 (9th Cir. 1986).

5 |     69.    In the course of an inventory search, government agents are not

6 | permitted to read written documents, as they may contain information that goes well

7 | beyond the allowed limited scope of an inventory search. *See United States v.*

8 | *Khoury*, 901 F.2d 948, 959 (11th Cir. 1990) (reading diary during inventory search

9 | was a Fourth Amendment violation; the government agent was only allowed to flip

10 | through the diary to see if any separate document or object was stuck between its

11 | pages); *see also United States v. Santos*, 961 F.Supp. 71, 73–74 (S.D.N.Y.1997)

12 | (finding that reading all written material among defendant's possessions during

13 | inventory search was an "affirmative, investigatory act" in violation of the Fourth

14 | Amendment).

15 | **B.**    **Relevant Fifth Amendment Due Process Law.**

16 |     70.    The Due Process Clause of the Fifth Amendment to the United States

17 | Constitution provides that, "[n]o person shall be . . . deprived of life, liberty, or

18 | property, without due process of law." U.S. Const., amend. V.

19 |     71.    The government's continued retention of seized property – even if

20 | initially lawful – raises the issue of procedural due process. *See Case v. Eslinger*, 555

21 | F.3d 1317, 1330 (11th Cir. 2009) ("A complaint of continued retention of legally

22 | seized property raises an issue of procedural due process. . ."); *see also Al Haramain*

23 | *Islamic Foundation v. U.S. Dept. of Treasury*, 686 F.3d 965, 980 (9th Cir. 2012)

24 | ("[T]he Constitution does require that the government take reasonable measures to

25 | ensure basic fairness to the private party and that the government follow procedures

26 | reasonably designed to protect against erroneous deprivation of the private party's

27 | interests."); *Lewis v. City of Culver City*, 2018 WL 1406609, *2 (C.D. Cal. Mar. 19,

28 | 2018) ("[T]he continued retention of legally seized property would raise an issue of

procedural due process . . . ."); *Lena Sutton* v. *Leesburg, Alabama,* 2021 WL 1264244, *13 (N.D. Ala. Apr. 6, 2021) ("[T]he continued retention of legally seized property. . . raises an issue of procedural due process.").

**C.    *Bivens*.**

72.    In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that, "violation of [the Fourth Amendment's] command by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct," *id.* at 389, and that a plaintiff "is entitled to recover money damages for any injuries he has suffered as a result of the agent's violation of the Amendment." *Id.* at 397; *see also Boule v. Egbert*, 980 F.3d 1309, 1315 (9th Cir. 2020) (Plaintiff's "Fourth Amendment claim . . . is a permissible area for *Bivens* claims," and thus "may proceed as a *Bivens* damages claim.")

73.    The Supreme Court has long held that punitive damages may be awarded in a *Bivens* action.  *See Carlson v. Green*, 446 U.S. 14, 22 (1980) ("Punitive damages are 'a particular remedial mechanism normally available in the federal courts,' and are especially appropriate to redress the violation by a government official of a citizen's constitutional rights.") (citation omitted).

## DEFENDANTS UNLAWFULLY SEIZED, SEARCHED AND DEPRIVED PLAINTIFF OF HIS PROPERTY

74.    Defendants' seizure and search of Plaintiff's safe deposit box and continued detention of his property was, and is, unlawful and unconstitutional in the following respects, among others.

75.    *First*, the seizure warrant for Plaintiff's box was invalid because Defendants lacked any probable cause that the contents of the box was contraband or otherwise connected to criminal activity.  That the Defendants lacked probable cause is manifest on the face of the seizure warrant which, expressly states that "[t]his warrant does not authorize a criminal search or seizure of the contents of the safety

deposit boxes."  It is also evident from the unsealed portion of the supporting affidavit, which expressly states that "[t]he warrants authorize seizure of the nest of boxes themselves, <u>not</u> their contents."

76.    *Second*, on information and belief, Defendants knowingly or recklessly made materially false and misleading statements to the Magistrate Judge who issued the seizure warrant by either falsely stating that the government had probable cause to believe that Plaintiff's box, or the nest of safe deposit boxes in which Plaintiff's box was included, contained contraband or was otherwise connected to criminal activity, or by omitting to forthrightly advise the Magistrate Judge that the government lacked such probable cause as to Plaintiff's box or as to the nest of boxes in which Plaintiff's box was included.

77.    *Third*, Defendants cannot avail themselves of the good faith exception to a facially deficient seizure warrant because the warrant was so lacking in indicia of probable cause with respect to Plaintiff's box and its contents as to render official belief in the existence of such probable cause entirely unreasonable.  Indeed, the warrant expressly states that it does not authorize the search or seizure of any box, including Plaintiff's, for purposes of criminal investigation.

78.    *Fourth,* Defendants acted unreasonably in breaking open Plaintiff's box because they lacked probable cause that the contents of the box were contraband or otherwise connected to criminal activity, and by breaking it open, Defendants needlessly subjected its contents to theft and government tampering.

79.    *Fifth,* Defendants' purported "inventory search" of Plaintiff's box was unlawful because their seizure of it was invalid in the first place, as entirely lacking in probable cause.

80.    *Sixth,* Defendants' purported "inventory search" of Plaintiff's box was also unlawful as it was, in fact, a pretext for conducting an investigatory search, the true purpose of which was to further Defendants' indiscriminate criminal investigation of USPV box holders.

81.     *Seventh,* Defendants' purported "inventory search" of Plaintiff's box was also unlawful because it was not required by or conducted pursuant to established and standardized agency policies and procedures.  By way of example, and without limitation, under the government's inventory search policies, the government is only permitted to conduct an inventory search as far as needed to "determine ownership" and "should extend no further."  But in Plaintiff's case, there was no need for the government to conduct an inventory search of the contents of Plaintiff's box to determine ownership.  Plaintiff's name and telephone number and his mother's name and telephone number were on the form affixed to the top of Plaintiff's box, yet the government made no effort to contact them before seizing and searching Plaintiff's box and its contents.

82.     *Eighth,* since Defendants completed inventorying the contents of Plaintiff's box on or about March 22, 2021, Defendants have deprived Plaintiff of the use, benefit and enjoyment of his property without due process by failing to promptly establish and implement a legitimate process for the immediate return of his property, or even for verifying that Plaintiff is the owner of that property.  Indeed, the government has repeatedly admitted that it has no established process for the return of property.

## FIRST CAUSE OF ACTION

### (For Return of Property Pursuant to 41(g))

### (Against Defendants United States, Wilkinson and Koons Johnson)

83.     Plaintiff repeats and realleges paragraphs 1 through 82 of this Complaint as if fully alleged herein.

84.     Federal Rule of Criminal Procedure 41(g) provides that, "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return . . . ."

85.     Plaintiff is a "person aggrieved" within the meaning of Rule 41(g) because, as described more fully above:

1      (a)    Defendants unlawfully seized his safe deposit box at USPV and its

2  contents, in violation of his Fourth Amendment rights;

3      (b)    Defendants unlawfully searched that box and its contents, in

4  further violation of his Fourth Amendment rights; and

5      (c)    Defendants have unlawfully deprived (and continue to deprive)

6  Plaintiff of the use, benefit and enjoyment of his property, in violation of his Fifth

7  Amendment due process rights.

8      86.    Because Defendants' conduct as described herein constituted an

9  unlawful seizure of Plaintiff's safe deposit box and its contents, an unlawful search of

10  his box and its contents and an unlawful deprivation of Plaintiff's property without

11  due process, Plaintiff is entitled to the return of his property under Rule 41(g).

12                  **SECOND CAUSE OF ACTION**

13           **(For Damages Pursuant to *Bivens, 403 U.S. 388 (1971)*)**

14         **(Against Koons Johnson individually and DOES 1-10)**

15      87.    Plaintiff repeats and realleges paragraphs 1 through 86 of this Complaint

16  as if fully alleged herein.

17      88.    Under the Fourth Amendment, Plaintiff's safe deposit box and its

18  contents may not be seized and searched without probable cause.

19      89.    Under the Fifth Amendment, Plaintiff may not be deprived of the use,

20  benefit and enjoyment of his property without due process of law.

21      90.    Defendants Koons Johnson and DOES 1-10, as agents of the

22  United States acting under color of authority, violated Plaintiff's Fourth Amendment

23  rights by seizing his safe deposit box and its contents without probable cause.

24      91.    Defendants Koons Johnson and DOES 1-10, as agents of the

25  United States acting under color of authority, further violated Plaintiff's Fourth

26  Amendment rights by searching his safe deposit box without probable cause.

27      92.    Defendants Koons Johnson and DOES 1-10, as agents of the

28  United States acting under color of authority, also violated Plaintiff's Fifth

Amendment rights by depriving Plaintiff of the use, benefit and enjoyment of the property he was storing in his safe deposit box without due process of law.

93.     Because Defendants Koons Johnson's and DOES 1-10's conduct as described herein constituted an unlawful seizure of Plaintiff's safe deposit box and its contents, an unlawful search of his box and its contents, and an unlawful deprivation of Plaintiff's property without due process, Plaintiff is entitled to damages under *Bivens*, 403 U.S. 388 (1971), and its progeny, including, but not limited to, punitive and exemplary damages.

**THIRD CAUSE OF ACTION**

**(Declaratory Relief)**

**(Against All Defendants)**

94.     Plaintiff repeats and realleges paragraphs 1 through 93 of this Complaint as if fully alleged herein.

95.     As described above, Plaintiff contends that Defendants have unlawfully seized his property in violation of the Fourth Amendment; have unlawfully searched his property in violation of the Fourth Amendment; and are unlawfully depriving him of the use, benefit and enjoyment of his property without due process in violation of the Fifth Amendment.

96.     Defendants contend that their seizure, search and continued and indefinite detention of Plaintiff's property is reasonable and lawful, and therefore Plaintiff is not entitled to relief.

97.     Accordingly, a judicial declaration is necessary and appropriate at this time and under these circumstances, so that Plaintiff may ascertain his right to regain possession of his personal property that Defendants have seized and are continuing to detain, and to do so without having to subject himself to criminal investigation.

//

//

//

**COMPLAINT**

487790.3

# FOURTH CAUSE OF ACTION

### (For Order Disclosing Supporting Affidavit, and Inventory Pursuant to Rule 41(f) and the Court's Inherent Power)

### (Against Defendants United States, Wilkison and Koons Johnson)

98.     Plaintiff repeats and realleges paragraphs 1 through 97 of this Complaint as if fully alleged herein.

99.     Federal Rule of Criminal Procedure 41(f)(1)(C) provides, in relevant part, that, "[t]he officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises the property was taken . . . ."

100.    Federal Rule of Criminal Procedure 41(f)(1)(D) provides, in relevant part, that "[t]he judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant."

101.    Additionally, the Court has the inherent power to order the government to provide Plaintiff with an unsealed copy of the affidavit submitted by the government in support of its warrant application.

102.    The government has taken property from Plaintiff, namely, his safe deposit box at USPV and its contents.  The government has not provided Plaintiff with the inventory of his property that was the product of Defendants' purported inventory search of Plaintiff's safe deposit box.  Accordingly, pursuant to Rule 41(f), Plaintiff is entitled to receive any inventories of his property prepared by the government.

103.    The government has only unsealed a small portion of the affidavit it filed in support of the seizure warrant.  Accordingly, Defendants should be ordered to provide Plaintiff's counsel with a copy of any inventory of Plaintiff's property, and the entire, unsealed support affidavit.

//

487790.3

**PRAYER FOR RELIEF**

Plaintiff prays for judgment against Defendants as follows:

A.    For an order requiring Defendants to immediately return all property seized from Plaintiff's Box No. 110 at USPV.

B.    For damages against Defendants Koons Johnson individually and DOES 1-10 in an amount to be determined at trial, but at least for the value of the property taken.

C.    For punitive and exemplary damages against Defendants Koons Johnson individually and DOES 1-10.

D.    For a declaration that Defendants' conduct as described in this Complaint has violated Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution.

E.    For an order requiring Defendants to immediately provide Plaintiff's counsel with a copy of any inventory of Plaintiff's property, and the entire, unsealed support affidavit.

F.    For costs and reasonable attorney's fees pursuant to 28 U.S.C. § 2412.

G.    For such other and further relief as the Court deems just and proper.


DATED: May 25, 2021              **ISAACS | FRIEDBERG LLP**


                                 _____
                                 Jeffrey B. Isaacs, Esq.
                                 Jerome H. Friedberg, Esq.
                                 *Attorneys for Plaintiff John Joe*

**COMPLAINT**

487790.3

**DEMAND FOR JURY TRIAL**

Plaintiff John Joe hereby demands a jury trial on all issues properly triable to a jury pursuant to Federal Rule of Civil Procedure 38.

DATED:  May 25, 2021                          **ISAACS | FRIEDBERG LLP**

Jeffrey B. Isaacs, Esq.
Jerome H. Friedberg, Esq.
William A. Wargo, Esq.
*Attorneys for Plaintiff John Joe*

**COMPLAINT**

487790.3